IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| TROY TYLER<br><br>      Plaintiff,<br><br>v.<br><br>FIRST HOSPITALITY, LLC, FIRST HOSPITALITY GROUP, INC., KERRI BLANCHARD, KYLE MIRIANI, DILLON DOUGLAS, NEIL UPADHYAY, and BRIAN ATKINS,<br><br>      Defendants. | **No. 4:24-cv-00073-RGE-HCA**<br><br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO AMEND AND DENYING DEFENDANTS' MOTION TO PARTIALLY DISMISS** |

## I.   INTRODUCTION

Plaintiff Troy Tyler asserts claims of race-based harassment, race-based discrimination, and retaliation against Defendants First Hospitality, LLC, First Hospitality Group, Inc., Kerri Blanchard, Kyle Miriani, Dillon Douglas, Neil Upadhyay, and Brian Atkins. Second Am. Pet. ¶¶ 56–86, ECF No. 11. Now before the Court is Tyler's motion to amend his second amended petition. Pl.'s Mot. Amend Pet., ECF No. 32. Tyler proposes amendments that would add a defendant—Hospitality Staffing, Inc.—and add allegations asserting the relationship between this new defendant and defendants already named. *See* Pl.'s Proposed Third Am. Pet., ECF No. 32-6. Defendants resist, arguing the proposed amendments are untimely and futile. Defs.' Resist. Pl.'s Mot. Amend. Pet. 2, ECF No. 33.

For the reasons set forth below, the Court grants the motion to amend. Because this motion is granted, the Court denies Defendants' pending motion to partially dismiss as moot. *See* Defs.' Mot. Partially Dismiss, ECF No. 12. In connection with Defendants' futility argument, however, the Court addresses some of the arguments Defendants advanced in support of their motion to dismiss. Defendants may, of course, file an updated motion to dismiss consistent with the Court's

holdings on those arguments.

## II.   BACKGROUND

The following facts are alleged in Tyler's proposed third amended petition. ECF No. 32-6. For the purposes of assessing Defendants' futility arguments—central to their resistance to Tyler's motion to amend—the Court assumes these allegations as true. *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010); *Brown v. Medtronic, Inc.*, 628 F.3d 451, 460 (8th Cir. 2010). All facts discussed in this section are also alleged in Tyler's second amended petition. *Compare* ECF No. 11 *with* ECF No. 32-6.

Tyler is a black man who resides in Polk County. ECF No. 32-6 ¶ 7; ECF No. 11 ¶ 7. He served as a security guard at Hotel Fort Des Moines from January 2022 to August 2022. *See* ECF No. 32-6 ¶¶ 21, 24, 53; ECF No. 11 ¶¶ 19, 22, 51. As part of his duties as a security guard he made rounds throughout the hotel to ensure the safety and security of the building. ECF No. 32-6 ¶ 25; ECF No. 11 ¶ 23. During Tyler's interview for this position, Upadhyay—the Director of Operations for Hotel Fort Des Moines—indicated Tyler would receive a promotion to security manager if he continued working at the Hotel for a few months. ECF No. 32-6 ¶¶ 14, 26, 38; ECF No. 11 ¶¶ 12, 24, 36.

During the period of January 2022 to August 2022, Blanchard was a lobby attendant at Hotel Fort Des Moines. ECF No. 32-6 ¶¶ 15, 27–38; ECF No. 11 ¶¶ 13, 25–36. Beginning in April 2022, Blanchard and Tyler had several conflicts in which Blanchard called Tyler names or made false reports about him to Miriani—the Human Resources Manager at Hotel Fort Des Moines. ECF No. 32-6 ¶¶ 17, 27–28, 30–35; ECF No. 11 ¶¶ 15, 25–26, 28–33. On multiple occasions, Tyler reported Blanchard's behavior to Miriani, to Upadhyay, to Atkins—the General Manager of Hotel Fort Des Moines—or to Douglas—the Director of the Front Office at Hotel Fort Des Moines; no action was immediately taken. ECF No. 32-6 ¶¶ 16–18, 29–30; ECF No. 11 ¶¶ 14–16, 27–28. Tyler first made a report to Douglas in April 2022 after Blanchard falsely reported to Miriani

that Tyler had "watched her in the hotel and intimidated her." ECF No. 32-6 ¶¶ 27–29; ECF No. 11 ¶¶ 25–27. Douglas took no action in response. ECF No. 32-6 ¶ 29; ECF No. 11 ¶ 27. On June 3, 2022, Tyler removed a door stop from a door propped open and shut the door to secure it. ECF No. 32-6 ¶ 30; ECF No. 11 ¶ 28. Thereafter Blanchard yelled at Tyler, demanded the doorstop be returned to her, and called Tyler a "douchebag." ECF No. 32-6 ¶ 30; ECF No. 11 ¶ 28. Tyler reported the incident to Miriani, Upadhyay, and Atkins, providing video footage as evidence. ECF No. 32-6 ¶ 30; ECF No. 11 ¶ 28. Nothing was done in response. ECF No. 32-6 ¶ 30; ECF No. 11 ¶ 28. On July 21, 2022, while Tyler was standing near the lobby desk, Blanchard yelled "Do you have something to say to me?" and then "go to work," while recording the interaction on her phone. ECF No. 32-6 ¶ 34; ECF No. 11 ¶ 32. Tyler wrote a letter to Miriani, Upadhyay, and Atkins reporting this incident. ECF No. 32-6 ¶ 35; ECF No. 11 ¶ 33.

On July 22, 2022, Miriani notified Tyler that he no longer wanted to receive false complaints from Blanchard. ECF No. 32-6 ¶ 36; ECF No. 11 ¶ 34. He instructed Tyler to come to work only after Blanchard had left the hotel, normally around midnight. ECF No. 32-6 ¶ 36; ECF No. 11 ¶ 34. Tyler then informed Miriani that he believed Blanchard had "an issue with African American men." ECF No. 32-6 ¶ 36; ECF No. 11 ¶ 34. Tyler further alleges Blanchard has stated she has a hatred for police, but she has "only acted with disdain toward [him] and not white people who are former officers." ECF No. 32-6 ¶ 37; ECF No. 11 ¶ 35. On August 3, 2022, Tyler followed up with Upadhyay about his promotion, but Upadhyay said there were insufficient funds for a promotion. ECF No. 32-6 ¶¶ 38–39; ECF No. 11 ¶¶ 36–37. Upadhyay also told Tyler he should "leave this place" because he had received complaints stating Tyler "took pictures of [people] or [is] in their business." ECF No. 32-6 ¶ 40; ECF No. 11 ¶ 38. Upadhyay also admitted he knew the complaints were "nonsense" and had not previously informed Tyler of the complaints for this reason. ECF No. 32-6 ¶ 42; ECF No. 11 ¶ 40. Upadhyay also instructed Tyler to report continuing issues directly to him and not to other management. ECF No. 32-6 ¶ 40; ECF

No. 11 ¶ 38. On August 4, 2022, Miriani instructed Tyler to leave the building as soon as possible because Blanchard was present on the property. ECF No. 32-6 ¶ 43; ECF No. 11 ¶ 41. Blanchard then saw Tyler in the building and yelled at another staff member, stating falsely that Tyler had assaulted three people and that she did not feel safe with him in the building. ECF No. 32-6 ¶ 45; ECF No. 11 ¶ 43. On August 9, 2022, Upadhyay emailed the entire hotel staff, stating Tyler and Blanchard were both banned from the premises. ECF No. 32-6 ¶ 52; ECF No. 11 ¶ 50. Tyler was terminated the next day on the grounds that he was "rude" to guests. ECF No. 32-6 ¶ 53; ECF No. 11 ¶ 51. Blanchard's employment was later reinstated with backpay. ECF No. 32-6 ¶ 55; ECF No. 11 ¶ 53. Tyler's was not. ECF No. 32-6 ¶ 55; ECF No. 11 ¶ 53.

During the same period, prior to Tyler's termination, a different employee—Brad Johnson—sexually harassed a female employee—Sydney Lalor. *See* ECF No. 32-6 ¶¶ 48, 50; ECF No. 11 ¶¶ 46, 48. Tyler witnessed the harassment and encouraged Lalor to report the incident. ECF No. 32-6 ¶ 48; ECF No. 11 ¶ 46. The harassment was reported to Miriani and Atkins, but they took no steps to correct Johnson's behavior. ECF No. 32-6 ¶ 49; ECF No. 11 ¶ 47. Johnson is a white man. ECF No. 32-6 ¶ 50; ECF No. 11 ¶ 48.

In February 2023, Tyler filed a "race and skin color discrimination complaint" with the Iowa Civil Rights Commission. ECF No. 32-6 ¶ 3; ECF No. 11 ¶ 3. In September 2023, he received a "Right to Sue Letter" from the commission. ECF No. 32-6 ¶ 4; ECF No. 11 ¶ 4. In November 2023, Tyler filed a petition asserting claims arising from the above allegations in Iowa District Court for Polk County. Defs.' Ex. Supp. Notice Removal 3–14, ECF No. 1-1. In December 2023, Tyler filed his first amended petition. *Id.* at 15–28. In February 2024, Defendants removed this action to federal court. Notice Removal, ECF No. 1. In March, Tyler filed an unresisted motion to amend his first amended petition; he was granted leave to amend, and he subsequently filed a second amended petition. Mot. Amend First Am. Pet., ECF No. 8; Text Order, ECF No. 10; ECF No. 11.

Tyler's second amended petition asserted claims against nine defendants: Hawkeye Hotels, Inc. doing business as Hotel Fort Des Moines, Hilton Franchise Holding, LLC, doing business as Hilton Worldwide and Curio Collection by Hilton, First Hospitality, LLC, First Hospitality Group, Blanchard, Miriani, Douglas, Upadhyay, and Atkins. ECF No. 11. The petition asserted three counts against all of these Defendants: harassment and discrimination on the basis of skin color in violation of the Iowa Civil Rights Act (Count I), ECF No. 11 ¶¶ 56–64; retaliation in violation of the Iowa Civil Rights Act (Count II), *id.* ¶¶ 65–70; and violation of 42 U.S.C. § 1981 (Count III), *id.* ¶¶ 71–78. Tyler also asserts one count against all "corporate defendants," that is all Defendants except the individual Defendants—Blanchard, Miriani, Douglas, Upadhyay, and Atkins—for race and skin color discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Count IV). *Id.* ¶¶ 79–86. In March 2024, Defendants moved for partial dismissal of Tyler's complaint. ECF No. 12. Tyler resisted. Pl.'s Resist. Defs.' Mot. Partially Dismiss, ECF No. 20. In April 2024, Tyler voluntarily dismissed two defendants—Hawkeye Hotels, Inc. doing business as Hotel Fort Des Moines, Hilton Franchise Holding, LLC, doing business as Hilton Worldwide and Curio Collection by Hilton. Notice Voluntary Dismissal, ECF No. 21. Later in April the Court heard oral argument on Defendants' motion to partially dismiss. Hr'g Mins., ECF No. 31. Attorney Tyler Adams appeared on behalf of Tyler, and attorneys Bridget Penick and Olivia Norwood appeared on behalf of Defendants. *Id.*

In June 2024, while the remaining Defendants' motion to dismiss was still pending, Tyler moved to amend his second amended petition. ECF No. 32. The proposed amended petition alters the operative petition by adding a new defendant, Hospitality Staffing, Inc., and by adding allegations that clarify the relationship between Hospitality Staffing, Inc., First Hospitality, LLC, and First Hospitality Group. ECF No. 32-6 ¶¶ 9–13. The proposed amended petition also removes allegations concerning the defendants that were voluntarily dismissed and narrows the set of defendants against whom Count III is asserted to all defendants other than Blanchard, *id.* at 2, 13.

Defendants resist Tyler's motion to amend. ECF No. 33.

## III.   LEGAL STANDARD

### A.   Motion to Amend

"A party may amend its pleading once as a matter of course . . . ." Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Although Rule 15(a)(2) indicates leave to amend shall be "freely give[n]," "plaintiffs do not have an absolute or automatic right to amend." *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009) (quoting *United States v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005)). "A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules." *Id.* (citation omitted). Further, a denial does not abuse discretion "when there are 'compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Anderson v. Bank of the West*, 23 F.4th 1056, 1061 (8th Cir. 2022) (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)). A court appropriately denies leave to amend on the basis of futility if a claim added by the proposed amendment could not withstand a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6). *See Zutz*, 601 F.3d at 850.

### B.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of

6

litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). The Court must accept as true all factual allegations in the complaint, but not its legal conclusions. *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 555–56).

A plausible claim for relief "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). A plaintiff must "nudge[ ] their claims across the line from conceivable to plausible, [else] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

In ruling on a Rule 12(b)(6) motion to dismiss, a court's review is limited to the complaint, "matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record." *United States ex rel. Ambrosecchia v. Paddock Labs., LLC*, 855 F.3d 949, 953–54 (8th Cir. 2007) (internal quotation marks and citation omitted). Matters "outside the pleading" are not considered, including "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (quoting 5C Charles Alan Wright, et al., Federal Practice and Procedure § 1366); *see also Summers Mfg. Co., Inc. v. Tri-Cnty. AG, LLC*, 300 F. Supp. 3d 1025, 1035 (S.D. Iowa 2017) (collecting cases).

## IV.   DISCUSSION

Defendants argue Tyler's motion for leave to amend should be denied. ECF No. 33. Defendants first argue that Tyler's repeated amendment of his petition demonstrates repeated failures to cure deficiencies. *Id.* at 3. Further, Defendants note Tyler alerted the Court he planned

to move for leave to amend his petition in May 2024, but he did not move for leave until June 2024, demonstrating undue delay. *Id.* at 3–4 (citing Pl.'s Br. Supp. Resist. Def.'s Mot. Partially Dismiss 7, ECF No. 20-1). Last, Defendants argue Tyler's motion should be denied because his proposed amendments are futile. *Id.* at 4. As to Tyler's proposal to add Hospitality Staffing, Inc. as a defendant subject to his claims under the ICRA and Title VII, Defendants argue these claims against Hospitality Staffing, Inc. are futile because Tyler did not name Hospitality Staffing, Inc. as a defendant in his civil rights complaint cross-filed with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission, and he never received a right-to-sue Hospitality Staffing, Inc. from those agencies. *Id.* at 4–9. For these reasons, Defendants argue, Tyler failed to satisfy the administrative exhaustion prerequisite for his ICRA and Title VII claims as to Hospitality Staffing, Inc. *Id.* at 8–9. As to Tyler's proposal to add Hospitality Staffing, Inc. as a defendant subject to his claim under § 1981, Defendants argue the amendment is futile because the claim should be dismissed in its entirety for reasons set forth in support of Defendants' motion to partially dismiss. *Id.* at 4 n.2. Tyler disputes both arguments. ECF No. 32 ¶¶ 6–20; Pl.'s Reply Supp. Mot. Amend, ECF No. 34. The Court considers Defendants' arguments and finds insufficient reason to deny leave to amend.

### A.     Failure to Cure and Undue Delay

As to Defendants' argument that Tyler has repeatedly failed to cure defects in his petition, "repeated failure to cure deficiencies by amendments previously allowed" may justify denial of leave to amend. *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 963 (8th Cir. 2015). Courts have relied on this rationale for denying leave to amend where a prior order of the Court informed the plaintiff of a defect that was not corrected upon a grant of leave to amend. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("The district court's written order identified the defects in the First Amended Complaint and then permitted Rutman to amend its complaint once again. The Second Amended Complaint did not cure the deficiencies."); *Denny v.*

*Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (contrasting with a case wherein "the appellant was unaware of the deficiencies in his complaint when he first amended it"). Defendants, however, provide no authorities applying these grounds for denial to circumstances similar to those in this case—in which the plaintiff's third proposed amendment raises new changes not previously addressed by the Court or prior amendments. Tyler first amended his petition before Defendants removed the case to this Court. ECF No. 1-1 at 15–28. That first amendment added Tyler's two federal claims. *Compare id.* at 8–13 *with id.* at 23–24. Following removal, Tyler moved to amend his first amended petition with Defendants' consent. Pl.'s Unresisted Mot. Amend First Am. Pet., ECF No. 8. That amendment only corrected the names of two parties who have since been voluntarily dismissed. *Id.*; ECF No. 21. Tyler's third proposed amendment seeks to add a new party, Hospitality Staffing, Inc., which, according to Tyler's representations, he did not know was a proper defendant until Defendants filed their motion to dismiss. *See* ECF No. 20-1 at 5. Because Tyler's motion does not propose amendments that would cure deficiencies previously identified, the Court does not view this factor as justifying denial. *Cf. Rutman Wine Co.*, 829 F.2d at 738.

> As to undue delay, as indicated by the cases cited by Defendants:
>
> Unexcused delay is sufficient to justify the court's denial . . . if the party is seeking to amend the pleadings after the district court has dismissed the claims it seeks to amend, particularly when the plaintiff was put on notice of the need to change the pleadings before the complaint was dismissed, but failed to do so.

*Ash*, 799 F.3d at 962 (omission in original) (quoting *Horras v. Cap. Strategies, Ltd.*, 729 F.3d 798, 804 (8th Cir. 2013)). Further, this Court has recognized as undue delay an unexplained delay extending beyond the deadline for amendments to pleadings. *Est. of Dau ex. rel. Boone v. Livesay*, No. 3:21-cv-00046-RGE-SBJ, 2022 WL 18777436, at *5 (S.D. Iowa Apr. 8, 2022). Neither case, however, is squarely on point, as Tyler seeks the proposed amendment before the Court has dismissed any of the claims presented for amendment and within the deadline for amendment set by the Court. *See* Order Adopting Proposed Scheduling Order ¶ 4, ECF No. 28 ("Motions to

add parties shall be filed by June 10, 2024."); ECF No. 32 (moving to amend to add party on June 10, 2024). Because Tyler's motion was filed before these milestones passed and while the case remains in early stages, the Court does not find Tyler's motion marked by undue delay. *Cf. Ash*, 799 F.3d at 962; *Est. of Dau*, 2022 WL 18777436, at *5.

  **B.**   **Futility of Amendments**

    **1.**   **Proposed ICRA and Title VII claims**

  Defendants' primary futility argument asserts Tyler's proposed ICRA and Title VII claims against Hospitality Staffing, Inc. are futile because he has failed to satisfy the administrative exhaustion requirement as to Hospitality Staffing, Inc. ECF No. 33 at 4–9. Specifically, Defendants argue Tyler failed to satisfy this requirement in two related ways: he did not name Hospitality Staffing, Inc. as a respondent in the complaint filed with the Iowa Civil Rights Commission, and, as a result, he did not receive a release or right-to-sue letter from the commission authorizing suit against Hospitality Staffing, Inc. *Id.* To buttress their position, Defendants ask the Court to consider Tyler's administrative complaint, ICRC investigative report notice, and the right-to-sue letter Tyler received from the ICRC, arguing the Court can take judicial notice of these documents under Federal Rule of Evidence 201(b). *Id.* at 5 n.4. Tyler admits he did not name Hospitality Staffing, Inc. as a respondent in his administrative complaint. ECF No. 32 ¶ 11. But he argues the requirements of administrative exhaustion were satisfied as to Hospitality Staffing, Inc. because this party shares an identity of interest with two parties who were named—First Hospitality, LLC and First Hospitality Group. *Id.* ¶ 14.

  Both Title VII and the Iowa Civil Rights Act require a plaintiff to exhaust administrative remedies before filing a civil complaint. "Title VII establishes an administrative procedure which a complaining employee must follow before filing a lawsuit in federal court." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first

opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *id.* "To exhaust administrative remedies, an individual must: (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue." *Id.* (citing 42 U.S.C. § 2000e-5(b), (c), (e)); *accord Rush v. State Ark. DWS*, 876 F.3d 1123, 1125 (8th Cir. 2017) (same). Similarly, the Iowa Civil Rights Act requires exhaustion of administrative remedies, and this requirement is likewise satisfied by the plaintiff's filing of an administrative complaint with the Iowa Civil Rights Commission and receipt of a right-to-sue letter. *Nuss v. Ctr. Iowa Binding Corp.*, 284 F. Supp. 2d 1187, 1196 (S.D. Iowa 2003) (citing Iowa Code §§ 216.15(1), 216.16(2)(a), and 216.17 (2003)). "Because the ICRA is in part modeled after Title VII, the Iowa Supreme Court has looked to federal law for guidance in interpreting the ICRA's required exhaustion of administrative remedies." *Beattie v. Wells Fargo Bank, N.A.*, No. 4:09-cv-00037, 2009 WL 10703097, at *7 (S.D. Iowa July 2, 2009) (citing *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005)).

"As a general rule, a complainant must file a charge against a party with the EEOC before she can sue that party under Title VII." *Sedlacek v. Hach*, 752 F.2d 333, 336 (8th Cir. 1985). The Eighth Circuit, however, has recognized exceptions to this rule. *Id.*; *accord Greenwood v. Ross*, 778 F.2d 448, 450 (8th Cir. 1985) ("'[O]mission of a party's name from the EEOC charge does not automatically mandate dismissal of a subsequent action under Title VII.'" (alteration in original) (quoting *Romero v. Union Pacific R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980))). "The filing of an EEOC charge is unnecessary where an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Greenwood*, 778 F.2d at 451; *see also Norgren v. Minn. Dep't of Human Servs.*, 96 F.4th 1048, 1055 (8th Cir. 2024) ("[T]he purpose of filing a charge of discrimination with the EEOC is to give the employer notice." (citing

*Greenwood*, 778 F.2d at 451)). Further, if a named party is "substantial[ly] identical" to an unnamed party, such that they effectively constitute "a single employer," or if the parties have sufficient identity of interest, the Eighth Circuit has recognized that "notice to one was notice to the other" and the naming of one party provides notice to the unnamed party for Title VII's purposes. *Sedlacek*, 752 F.2d at 336; *see also Greenwood*, 778 F.2d at 451 ("A suit is not barred 'where there is sufficient identity of interest between the respondent and the defendant [unnamed in the administrative charge] to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation.'" (*quoting Romero*, 615 F.2d at 1311)). The Eighth Circuit has also considered whether the unnamed party was actually prejudiced during administrative proceedings. *Greenwood*, 778 F.2d at 452 ("[The unnamed party] was represented by an attorney at the EEOC proceedings and at trial and was therefore not prejudiced by the lack of clarity in the appellant's naming of the defendants.").

In addition to actual prejudice, notice, and opportunity to participate, other courts have highlighted additional relevant considerations. In *Romero v. Union Pacific Railroad*, a case cited by *Greenwood*, the Tenth Circuit discusses prejudice and identity of interest in combination with two other factors: "whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint"; and "whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party." *Romero*, 615 F.2d at 1312 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)). Lower courts in this circuit have referenced a similar set of factors. *See, e.g.*, *Moore v. Healthcare of Iowa, Inc.*, No. 16-CV-1221-CJW, 2016 WL 6518445, at *4 (N.D. Iowa Nov. 2, 2016).

In the case of administrative exhaustion under the Iowa Civil Rights Act, when an employee's complaint does not state the name of each respondent, "the regulations state that a complaint is sufficient when the [Iowa Civil Rights Commission] 'receives from the complainant

a written statement sufficiently precise to identify the parties.'" *Beattie*, 2009 WL 10703097, at *7 (quoting Iowa Admin. Code r. 161-3.4(3)). As noted, due to the consonance between parts of the ICRA and Title VII, courts interpreting the administrative exhaustion requirement under the ICRA have looked to federal law applying Title VII for guidance. *See McElroy*, 703 N.W.2d at 391. Following other lower courts in this circuit, this Court thus interprets the requirement of a "sufficiently precise" statement identifying respondents in light of the identity of interest doctrine discussed above. *Cf. Whitney v. Franklin Gen. Hosp.*, 995 F. Supp. 2d 917, 926–30 (applying the analysis set forth in *Sedlacek* and *Greenwood* to resolve a motion to dismiss claims under the ICRA and Title VII for failure to exhaust administrative remedies).

Further, in the Eighth Circuit, the argument that a claim must be dismissed for failure to exhaust an administrative remedy is an affirmative defense that must be proven by the defendant. *See Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007). Accordingly, a plaintiff has "no obligation to plead in anticipation of an affirmative defense." *Moore*, 2016 WL 6518445, at *6. Rather, Defendants have the burden of showing sufficient basis exists to support their affirmative defense in light of the facts alleged on the face of the complaint and any documents the Court may consider in addition to the complaint. *Id.*

To rule on Defendants' futility argument alleging Tyler's failure to exhaust administrative remedies, the Court assumes the facts alleged in Tyler's proposed third amended petition and draws any reasonable inferences from those allegations. *Cf. Zutz*, 601 F.3d at 850; *Iqbal*, 556 U.S. at 678. The Court also considers Tyler's Iowa Civil Rights Commission Complaint Form and Tyler's right-to-sue letter, as these are necessarily embraced by Tyler's petition. ECF Nos. 12-2 to 12-4; *see* ECF No. 32-6 ¶¶ 3–4 (referencing Tyler's filing of an Iowa Civil Rights Commission complaint on February 23, 2023, and his receipt of a right-to-sue letter on September 27, 2023). Finally, the Court takes judicial notice of the Notice of Preliminary Screening Review sent to Tyler by the ICRC, the "Business Entity Search" result for Hospitality Staffing, Inc. drawn

from the website for the Office of the Illinois Secretary of State, and the Annual Reports for First Hospitality, LLC, First Hospitality Group, and Hospitality Staffing, Inc. filed with the Illinois Secretary of State. Pl.'s Exs. 3–6 Supp. Resist. Defs.' Mot. Partially Dismiss, ECF Nos. 20-4 to 20-7; Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *cf. Stahl v. U.S. Dept. of Agric.,* 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss. Exhibit 6, an Administrative Notice issued by the USDA in June 1989, is a public record . . . ." (citation omitted)). In light of these facts and the precedent discussed, the Court finds the facts under consideration at this stage of proceedings are insufficient to establish Tyler failed to exhaust administrative remedies as to Hospitality Staffing, Inc.

On February 23, 2023, Tyler filed a complaint with the Iowa Civil Rights Commission. ECF No. 32-6 ¶ 3. This complaint was cross-filed with the Equal Employment Opportunity Commission. *See* ECF No. 12-2 at 2. This complaint does not list Hospitality Staffing, Inc. as a respondent. *See generally id.* at 2–9. Rather, it lists, among several respondents, Hotel Fort Des Moines, Hilton Worldwide and Curio Collection by Hilton, and "First Hospitality." *Id.* at 4, 6. On September 27, 2023, the Iowa Civil Rights Commission sent Tyler a "Right-to-Sue letter." ECF No. 12-4; ECF No. 32-6 ¶ 4. The letter states it relates to both Tyler's complaint with the Iowa Civil Rights Commission and his cross-filed EEOC complaint. ECF No. 12-4 at 2, 4. The letter does not reference Hospitality Staffing, Inc. *See generally id.* at 2–4. The letter again lists Hotel Fort Des Moines, Hilton Worldwide and Curio Collection by Hilton, and "First Hospitality" as respondents to Tyler's complaint. *Id.* at 4.

Although Hospitality Staffing, Inc. is not listed as a respondent on Tyler's administrative complaint or right-to-sue letter, the factors discussed above are either neutral or weigh in favor of finding—for the purposes of a futility analysis—that Tyler's naming of "First Hospitality"

14

satisfied the administrative exhaustion requirement as to Hospitality Staffing, Inc. *Cf. Sedlacek*, 752 F.2d at 336. Turning first the issue of "substantial identity" or, at least, "identity of interest," the facts of the proposed amended petition and the accompanying documents indicate substantial identity between "First Hospitality" and Hospitality Staffing, Inc. "First Hospitality" appears to be a reference to—at least—two parties named in Tyler's lawsuit: First Hospitality, LLC and First Hospitality Group. When listing "First Hospitality" as a respondent to his administrative complaint, Tyler identified the address of First Hospitality as "222 W Adams St Suite 400[,] Chicago, IL 60606." ECF No. 12-2 at 6. The Annual Report for First Hospitality, LLC lists "222 W. Adams, Ste 400, Chicago, IL 60606" as its principal place of business. Pl.'s Ex. 4 Supp. Resist. Defs.' Mot. Partially Dismiss, ECF No. 20-5. Similarly, the Annual Report for First Hospitality Group lists the same address as the "[p]rincipal address of [the c]orporation." Pl.'s Ex. 5 Supp. Resist. Defs.' Mot. Partially Dismiss, ECF No. 20-6. Insofar as "First Hospitality" only refers to First Hospitality, LLC and First Hospitality Group, several facts identify First Hospitality Staffing, Inc., as a closely associated affiliate of these companies.[1] Tyler's proposed amended petition alleges Hospitality Staffing, Inc. is a "sister company" of First Hospitality, LLC, which also owns all assets of First Hospitality Group. ECF No. 32-6 ¶¶ 9, 10. Accordingly, the proposed amended petition further alleges all three are "under common ownership." *Id.* ¶ 11. The proposed amended petition also alleges Hospitality Staffing, Inc., at the times material, "was a staffing company . . . providing staff to First Hospitality Group, Inc. and First Hospitality, LLC in conjunction with their management of Hotel Fort Des Moines." *Id.* ¶ 10. Moreover, the proposed amended petition alleges "[u]pon information and belief, Defendants First Hospitality, LLC, First Hospitality Group, and Hospitality Staffing, Inc. functioned as one entity or as joint employers of [Tyler]." *Id.* ¶ 12.

---

[1] As briefly discussed in connection with administrative remedy exhaustion under the ICRA, the address provided for "First Hospitality" on Tyler's administrative complaint could also be viewed as indicating that "First Hospitality" is also a reference to Hospitality Staffing, Inc. *See infra* at 19.

These relationships are consistent with the overlapping management and ownership indicated by the three companies' annual reports. The sole manager of First Hospitality, LLC is Stephen Schwartz, whose listed address is the same as the principal place of business of the LLC—222 W. Adams, Ste. 400. ECF No. 20-5. Stephen Schwartz is also listed as a director and secretary of First Hospitality Group and a director of Hospitality Staffing, Inc. ECF No. 20-6; Pl.'s Ex. 6 Supp. Resist. Defs.' Mot. Partially Dismiss, ECF No. 20-7. The principal address of Hospitality Staffing, Inc. is also listed as 222 W Adams St. Suite 400, Chicago, IL 60606, the principal place of business of First Hospitality, LLC and the principal address of First Hospitality Group. ECF Nos. 20-5 to 20-7.

The common ownership of the "First Hospitality" entities and Hospitality Staffing, Inc., their collaborative roles in managing Hotel Fort Des Moines and its staffing, the fact that Stephen Schwartz serves as either a director or manager of each, and the fact that each entity has a primary address in the same suite, all support a finding of substantial identity of interests between the three entities—if not the further finding that the three entities are substantially identical to each other. *Cf. Sedlacek*, 752 F.2d at 336 ("Aggrieved complainants should not be charged with the knowledge of ofttimes intricate legal corporate relationships between closely held operating units."). The three entities at least had sufficient identity for notice of one to imply notice to the other. *Cf. id.* Tyler's administrative complaint was asserted against "First Hospitality" and "Hotel Fort Des Moines," and alleged Tyler's coworker was not held accountable for her harassment of Tyler by their superiors. ECF No. 12-2 at 3–4, 6, 8–9. On these grounds the complaint alleges "First Hospitality" and "Hotel Fort Des Moines" "engaged in a pattern and practice of harassment and hostility." *Id.* at 9. Given Hospitality Staffing, Inc.'s role as the staffing company that provided staff to the First Hospitality entities "in conjunction with their management of Hotel Fort Des Moines," ECF No. 32-6 ¶ 10, and given further that both of these entities have their principal address in the same location, it is reasonable to infer that notice of Tyler's complaint to First

Hospitality, LLC would have caused management at Hospitality Staffing, Inc. to be aware that it might be within the scope of Tyler's claims. *Cf. Moore*, 2016 WL 6518445, at *5.

Further, Stephen Schwartz's roles as the sole manager of First Hospitality, LLC, a director of First Hospitality Group, and a director of Hospitality Staffing, Inc. indicate Hospitality Staffing, Inc. would have received both notice of the charge and an opportunity to attempt conciliation. *Cf. Greenwood*, 778 F.2d 448, at 451; *see also* ECF Nos. 20-5 to 20-7. Defendants note that the Notice of Preliminary Screening Review states "[o]nly the parties listed on this letter and/or their legal representatives may attend [a] mediation," should the parties elect to mediate. ECF No. 12-3. But "First Hospitality" was listed as a respondent on this letter, and because Stephen Schwartz was a director or manager of each of the First Hospitality entities and Hospitality Staffing, Inc., this letter did not bar attendance of a representative of Hospitality Staffing, Inc. Drawing inferences in Tyler's favor, as required at this stage, notice to Schwartz provided adequate opportunity for Hospitality Staffing, Inc. to participate in mediation. *Cf. Greenwood*, 778 F.2d at 451; *Moore*, 2016 WL 6518445, at *4. Moreover, Defendants do not argue Hospitality Staffing, Inc. was actually prejudiced by the fact it was not expressly named in Tyler's administrative complaint, and the facts available would not support such an inference. *See generally* ECF No. 33 at 7; *cf. Greenwood*, 778 F.2d 448, at 452.

As to "whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint," *Romero*, 615 F.2d at 1312, Defendants argue Tyler could have determined Hospitality Staffing, Inc. was his employer and should have been named because that entity's name was on his paychecks and income tax forms. ECF No. 33 at 7. But Defendants provide no support for the Court's consideration of either the affidavit they cite or the income tax form cited by the affidavit. *Id.* (citing Feltman Aff. Supp. Defs.' Mot. Partially Dismiss, ECF No. 12-5). The facts alleged by the proposed amended complaint and those included in the documents subject to judicial notice do not indicate whether

Tyler could have determined Hospitality Staffing, Inc. should have been named in his administrative complaint.[2]

Last, as to "whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party," *Romero*, 615 F.2d at 1312, Tyler's proposed amended petition alleges the First Hospitality entities "held themselves out to be the employers" of Tyler. ECF No. 32-6 ¶ 13. The proposed amended petition also alleges, as discussed above, that Hospitality Staffing, Inc. provided staff to the First Hospitality entities "in conjunction with their management of Hotel Fort Des Moines." *Id.* ¶ 10. From these allegations, the Court could reasonably infer the First Hospitality entities may have represented to Tyler that they were his employer and thus were the proper respondents for his petition. *Cf. Romero*, 615 F.2d at 1312.

In light of these considerations, Tyler's proposed Title VII claim against Hospitality Staffing, Inc. is not futile for failure to exhaust administrative remedies. *Cf. Greenwood*, 778 F.2d at 450–52. Further, in light of this analysis under the identity of interest doctrine, and moreover, in light of the ICRC complaint's naming of the respondent "First Hospitality" with the same address as Hospitality Staffing, Inc., Tyler's proposed ICRC claims against Hospitality Staffing, Inc. are not futile for failure to exhaust administrative remedies. *Cf. Whitney*, 995 F. Supp. 2d at 927; *Beattie*, 2009 WL 10703097, at *7; *McElroy*, 703 N.W.2d at 391; Iowa Admin. Code r. 161-3.4(3). On these grounds Defendants' futility argument as to Tyler's proposed Title VII and ICRC claims against Hospitality Staffing, Inc. is rejected.

### 2.    Proposed § 1981 claim

Defendants' remaining futility argument concerns Tyler's proposed amendment to Count

---

[2] In contrast to the documents the Court views as subject to judicial notice, which are government records, the income tax form cited by Feltman's affidavit is a statement of Hospitality Staffing, Inc. on a government form.

III, which asserts a claim under § 1981. ECF No. 32-6 ¶¶ 73–80. Tyler seeks to add Hospitality Staffing, Inc. as a defendant subject to this claim, *id.*, and Defendants argue this amendment is futile for the reasons raised in their motion to partially dismiss, ECF No. 33 at 4 n.2.[3] In support of that motion, Defendants argue, first, that Tyler's § 1981 claim should be dismissed against all Defendants because he failed to adequately plead that race was a but-for cause of the adverse employment action taken against him. ECF No. 12-1 at 4–5. Defendants further argue Tyler's allegations fail to connect his race to his termination at all, and for this reason, they argue his § 1981 claim fails under any theory of discrimination—including discriminatory termination and the creation of a racially hostile work environment. *Id.* at 6–8.[4]

Tyler's reply in support of his motion to amend does not address Defendants' previously asserted arguments, but Tyler's resistance to Defendants' motion to dismiss is responsive. *See* ECF No. 20-1 at 3–4. The Court considers those arguments here. In his resistance, Tyler argues his alleged facts indicate he was the victim of racial discrimination. *Id.* at 3. He points to his allegation that he told Miriani he believed Blanchard had an issue with African Americans and his further allegation that less than a month later he was told to leave the building when Blanchard was present. *Id.* He also emphasizes that Blanchard was permitted to continuously harass him despite his complaints to supervisors. *Id.* Further, at oral argument, Tyler argued but-for cause did not mean sole cause and cited *Newman v. Amazon.com, Inc.*, No. 21-cv-531 (DLF), 2022 WL 971297 (D.D.C. Mar. 31, 2022) and *Seals v. Board of Regents of the University of Nebraska*,

---

[3] One of the amendments Tyler seeks to make is the removal of Blanchard as a defendant subject to the § 1981 claim. *See* ECF No. 32-6 at 13; ECF No. 32 ¶ 22. Defendants sought dismissal of Count III as against Blanchard, Defs.' Br. Supp. Mot. Partially Dismiss 8–9, ECF No. 12-1, so the Court infers Defendants do not resist this proposed amendment.

[4] Defendants also argue Tyler's § 1981 claims against the "individual defendants" Miriani, Douglas, Upadhyay, and Atkins should be dismissed because Tyler's allegations do not assert any of these Defendants "personally engaged in any discriminatory or harassing conduct based on race." ECF No. 12-1 at 8–9. This argument does not apply to Hospitality Staffing, Inc., so it is not addressed here.

No. 8:22-CV-420, 2023 WL 4849310, (D. Neb. July 28, 2023), as cases employing this principle.

Section 1981 provides that all persons within the jurisdiction of the United States shall have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The statute "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975); *see also Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998) (indicating "contracts" within § 1981 includes employment contracts). This statute's protections, however, only extend to "intentional discrimination solely because of [an individual's] ancestry or ethnic characteristics," such as an individual's race. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *accord Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468 (8th Cir. 2009) ("[Section] 1981 prohibits racial discrimination in 'all phases and incidents' of a contractual relationship." (citation omitted)).

A plaintiff's § 1981 claim will survive a motion to dismiss only if the plaintiff has adequately pleaded that "but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020). In so holding, the Supreme Court sought to apply the "ancient and simple 'but for' common law causation test." *Id.* 332 (*citing Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013)). The Court further emphasized that test is distinct from a test requiring only that race played "some role" or that race was only a "motivating factor." *See id.* at 331, 336–37. Lower courts, however, have disputed whether the "but for" cause requirement, in this context—and specifically on a motion to dismiss—implies the plaintiff cannot allege more than one cause of a discriminatory act. Courts in the Seventh Circuit have taken this approach, concluding "a plaintiff cannot allege multiple discrimination theories as the 'but for' cause for a Section 1981 violation." *Arora v. Nav Consulting Inc.*, No. 21 C 4443, 2022 WL 7426211, at *2 (N.D. Ill. Oct. 13, 2022) ("Because Arora pleads not only race but also his ethnicity and national origin as the cause of Defendants'

discrimination, his Section 1981 claim fails as a matter of law."); *Piccioli v. Plumbers Welfare Fund Local 130, U.A.*, No. 19-cv-00586, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020) (interpreting *Comcast Corp.* as holding "[r]acial discrimination must be *the* determining factor" (emphasis added)); *see also McKenzie-El v. Am. Sugar Refining, Inc.*, No. 21-1089, 2021 WL 5412341, at *2 (4th Cir. Nov. 19, 2021) (unpublished and not binding in circuit) (finding the complaint did not allege facts showing race was a but-for cause and stating "[t]his is especially so considering that McKenzie-El explicitly pled that his age, religion, and complaints to human resources were causes of his employer's actions"). Other courts do not view multiple causes of discrimination as disproving a but-for cause; rather, these courts focus on whether the allegations identifying racial animus as a cause are sufficiently specific and substantial to support the inference of a but-for cause. *Seals*, 2023 WL 4849310, at *7 (noting the plaintiff's complaint did not merely "sprinkl[e] in a few allegations of race discrimination" and concluding that even though she also alleged discrimination based on disability, "the thrust of [her] Amended Complaint . . . is racial discrimination" due to several allegations concerning a defendant's specific comments about race); *Newman*, 2022 WL 971297, at *7 ("Newman has not failed to plead but-for causation because, elsewhere in her complaint, she alleges that she was discriminated against based on race and sex. First, 'events [often] have multiple but-for causes.' . . . Newman's complaint includes many allegations of race discrimination . . . ." (alteration in original) (emphasis omitted) (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020)); *see also Ziyadat v. Diamondrock Hospitality Co.*, 3 F.4th 1291, 1297–98 (11th Cir. 2021) ("Under but-for causation statutes, like § 1981, we ask whether the discriminatory conduct had *a* 'determinative influence' on the injury." (emphasis added)).

In applying the but-for cause requirement set forth in *Comcast Corp.*, this Court follows the latter set of courts. The fact that a plaintiff alleges multiple causes of an adverse action in addition to racial animus may render implausible the inference that race was a but-for cause of the

action, but the allegation of multiple causes alone does not mandate that conclusion. *Cf. Newman*, 2022 WL 971297, at *7; *Takieh v. Banner Health*, No. 21-15326, 2022 WL 474170, at *1 (9th Cir. 2022) ("[T]he court's decision articulated three non-discriminatory grounds for the termination of Dr. Sharifi's PSA: patient care issues, alteration of medical records, and disruptive behavior. These non-discriminatory reasons render the allegation that race was the but-for cause of the termination of Dr. Sharifi's PSA implausible."); *see generally Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 372 (8th Cir. 2017) (applying the but-for cause requirement under the *McDonnell Douglas* framework and holding "[o]n the allegations here, the six-week period between the EEOC charge and the termination plausibly alleges a but-for causal connection" because the temporal gap was not too attenuated). This treatment of but-for causation under § 1981 hews closer to the "ancient and simple 'but for' common law causation test" invoked by *Comcast Corp.* 589 U.S. at 331 (citing *Nassar*, 570 U.S. at 347); *Bostock*, 590 U.S. at 656 (discussing the "'simple' and 'traditional' standard of but-for causation" and citing *Nassar*, 570 U.S. at 360, then noting "[o]ften, events have multiple but-for causes"). The question posed by the standard is whether the facts alleged render it plausible that but for the plaintiff's race—or his opposition to race discrimination—he would not have suffered an adverse employment action. *Cf. Takieh*, 2022 WL 74170, at *1; *Twombly*, 550 U.S. at 570.

Furthermore, the forms of race discrimination proscribed by § 1981 include retaliation, discriminatory discharge, and the creation of a racially hostile work environment. *See, e.g.*, *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008) ("[Section] 1981 encompasses claims of retaliation."); *Carlisle v. Rhodes & Rhodes Family Dentistry*, No. 22-13901, 2024 WL 621421, at *4 (11th Cir. 2024); *Anderson v. AstraZeneca LP*, No. 4:09-cv-00293, 2009 WL 10703054, at *3–*5 (S.D. Iowa Nov. 4, 2009). The but-for cause requirement applies to all of these theories of discrimination. *See Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 172–73 (4th Cir. 2020) ("[I]n line with other § 1981 claims, to state a § 1981 retaliation claim, a plaintiff must allege facts

rendering it plausible that, but for her participation in protected activity, [such as reporting race discrimination in employment,] she would not have suffered a materially adverse action."); *Seals*, 2023 WL 4849310, at *5 (holding a racially hostile work environment claim under § 1981 requires a plaintiff to plausibly plead "her race was the but-for cause of the harassment"). Although Tyler does not specify the theory of discrimination he seeks to assert, Defendants argue Tyler's § 1981 claim would fail whether a racially hostile environment, retaliation, or discriminatory discharge theory is asserted. *See* ECF No. 12-1 at 6–8. Upon consideration of the merits of these possible theories, the Court finds a discriminatory discharge theory would survive a motion to dismiss under Rule 12(b)(6). *Cf. Zutz*, 601 F.3d at 850. The Court concludes, on these grounds, that Tyler's proposed § 1981 claim against Hospitality Staffing, Inc. is not futile. The Court does not reach the remaining possible theories of discrimination that could be asserted in support of Tyler's § 1981 claim.

Defendants argue that Tyler's allegations indicate "other non-racial explanations for why his employment may have been terminated," ECF No. 12-1 at 5, such as his support for Lalor after her experience of sexual harassment, *id.* at 4, 7–8. Defendants argue that, because of race-independent reasons for his termination, implied by his allegations, "it is impossible for the Court to find that race was the 'but-for' cause of [his] termination,'" *Id.* at 4 (alteration in original) (quoting *Adetoro v. King Abdullah Academy*, 585 F. Supp. 3d 78, 85 (D.D.C. 2020)). Furthermore, Defendants also argue Tyler's allegations fail altogether to suggest any connection between Tyler's termination and his race. *See* ECF No. 12-1 at 4–6. The Court, however, finds these arguments unpersuasive.

Tyler's allegations suggest two race-independent reasons for his termination. First, he alleges he encouraged Lalor to report her experience of being sexually harassed by Johnson. ECF No. 32-6 ¶ 48. He further alleges Miriani and Upadhyay "believed Tyler created a problem by encouraging [Lalor] to report Brad Johnson, and they retaliated against him as a result." *Id.* ¶ 51;

*see also id.* ¶ 78 (alleging "Defendants retaliated against [Tyler] because of his race and because of his complaints opposing discrimination and sexual harassment"). These allegations suggest Tyler may have been terminated because he encouraged reporting sexual harassment. Second, Tyler alleges that at an unemployment hearing following termination he was told the reason for his termination was that he had been "accused of being 'rude' to guests." *Id.* ¶ 53.

Viewing Tyler's allegations holistically, however, they elevate Tyler's conflict with Blanchard as a salient cause of his termination and suggest his race, as an aspect of that conflict, was determinative of the termination. *Cf. Seals*, 2023 WL 4849310, at *7 ("The thrust of the Amended Complaint, particularly as it pertains to Christensen, is racial discrimination."). Tyler had conflict with Blanchard from April 2022 through his termination in August 2022, and he reported her behavior multiple times throughout that period. ECF No. 32-6 ¶¶ 29, 30, 35. His allegations indicate it was not until July 22, 2022, that he first framed this conflict as caused by Blanchard's "issue with African American men." *Id.* ¶ 36. On August 10, 2022, he was terminated. *Id.* ¶ 53. The fact that this termination came nineteen days after his first allegation that the conflict was caused by Blanchard's racial animus suggests Tyler's framing of the conflict in this way was determinative of his termination. *Cf. Wilson*, 850 F.3d 372. Further, the difference between the handling of Tyler's conflict with Blanchard and a second conflict between a white male employee and a female employee provides additional support for the inference that the racial element of Tyler's conflict was determinative of his termination. Tyler alleges Miriani and Upadhyay received reports that Johnson, a white male, had harassed a female employee—reports substantially similar to, if not more egregious than, Blanchard's allegations about Tyler. *See id.* ¶¶ 48–50; *see also id.* ¶¶ 27, 45. Tyler further alleges Johnson, unlike Tyler, was not terminated. *See id.* ¶¶ 50, 53

Tyler's allegations also indicate that Miriani and Upadhyay were indifferent to suggestions that the conflict between Blanchard and Tyler was one-directional harassment and possibly related to race. Upadhyay acknowledged that the conflict between Blanchard and Tyler was one-sided

and that Blanchard's complaints about Tyler were "nonsense." *See id.* ¶ 40. Miriani was aware, due to Tyler's allegations, that Blanchard's actions were possibly motivated by racial animus. *See id.* ¶ 36. Nonetheless, these superiors were not dissuaded from imposing asymmetrical burdens and—ultimately—punishment on Tyler, who was required to build his schedule around Blanchard's and who lost his job, while Blanchard did not. *Id.* ¶¶ 43, 55. This indication of indifference provides meaningful context for Tyler's allegations that his supervisors handled a second conflict between a white male employee and a female employee differently. *See id.* ¶¶ 48–50; *see also id.* ¶¶ 27, 45. That disparate treatment of similarly situated male employees, one black and one white, viewed in light of, first, the temporal proximity between Tyler's termination and his framing of his conflict with Blanchard as race-related and, second, his superiors' indifference to indications that the conflict was actually race-based harassment, establishes the plausibility of the inference that Tyler would not have been terminated but-for his race. *Cf. Newman*, 2022 WL 971297, at *7; *Twombly*, 550 U.S. at 570.

The Court does not view Tyler's allegation of other causes of termination—such as retaliation for encouraging Lalor to report sexual harassment or for reports alleging he was rude to customers—as detracting from this conclusion. Tyler's alleged "support" for a colleague's report of sexual harassment may have served as a further cause of his termination, but this does not render it impossible that a separate factor was a but-for cause of his termination. *Cf. Newman*, 2022 WL 971297, at *7 ("The fact that Newman alleges that the defendants took discriminatory actions against her because of her sex does not preclude her allegation that they also took those actions because of her race."). Moreover, Tyler's allegations suggest reports of rudeness were not a contributing cause of his termination, so these allegations do not indicate Tyler's race was not a but-for cause. *See id.* ¶¶ 40, 53.

For these reasons, the Court concludes Tyler has not failed to adequately allege he would not have been terminated but-for his identity as a black man. Accordingly, Defendants' arguments

as to the futility of Tyler's proposed § 1981 claim against Hospitality Staffing, Inc. are not persuasive, and the Court does not find that claim futile.

## V. CONCLUSION

The Court grants Tyler's motion to amend, finding the intended amendments set forth in the proposed third amended petition both timely and not futile. The Court further denies Defendants' pending motion to partially dismiss Tyler's second amended petition as moot.

Accordingly, **IT IS ORDERED** that Plaintiff Troy Tyler's Motion to Amend Second Amended Petition, ECF No. 32, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' First Hospitality, LLC, First Hospitality Group, Inc., Kerri Blanchard, Kyler Miriani, Dillon Douglas, Neil Upadhyay, and Brian Atkins's Motion to Partially Dismiss, ECF No. 12, is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff Troy Tyler shall file on the docket a clean copy of his Third Amended Petition consistent with the redline submitted at ECF No. 32-6 and proposing the amendments set forth herein as permitted.

**IT IS SO ORDERED.**

Dated this 7th day of August, 2024.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE

26